## Union National Bank v. Manchester Borough.

*James G. Glessner,* for plaintiff; *McClean Stock,* for defendant.

NILES, P. J., June 24, 1929.—June 6, 1927, the Union National Bank of Mt. Wolf, Pa., received a note for $5000, payable in six months, signed "Manchester Borough, George M. Bare, Pres. (L. S.), W. H. Baker, Treas. (L. S.). Witnesses: J. H. Decker, Sec'y. With the borough seal," and paid therefor to the borough treasurer $5000. On the same day, at a regular session of the borough council, $125 interest was paid, and the report of William Baker, treasurer, was received and spread on the minutes, including the item "June 6, loan Union National Bank, $5,000.00." Dec. 5, 1927, the borough council, in regular session, authorized the payment of $500 on the note, and among the bills ordered paid was "Union National Bank, interest and part payment on note, $612.50." Dec. 6, 1927, a renewal note for $4500 was received by the Union National Bank, signed in the same manner as the original. The legal requirements of a valid indebtedness against the borough were not complied with regarding the $5000 furnished by the bank to the borough treasurer. No motion, resolution or ordinance was passed or approved by the burgess authorizing this loan, or any loan, or any increase of indebtedness; no vote was recorded; no annual tax to provide for the payment was assessed; no statement of indebtedness, etc., was made or filed; nor was there any motion, resolution or ordinance authorizing the officers of the borough to make, execute or deliver the notes of June 6 or Dec. 6, 1927; nor was there any

municipal action authorizing a temporary loan. The $5000 was paid by the borough treasurer on account of the purchase of fire apparatus and hose bought by the borough. The legal requirements were not complied with in the purchase of this fire apparatus and hose, and the expenditure therefor by the borough was illegal, and the councilmen of the borough were surcharged and have paid into the borough treasury a total of $6323.21, which covered the $5000 furnished by the bank and paid by the borough for the apparatus. The practical result is that the borough has the fire apparatus, the cost of which has been repaid to the borough by the individual councilmen, and the borough also has in its treasury $4500, the balance of the $5000 furnished by the bank.

The puzzle of the case is: May the borough keep both the fire apparatus, which has finally been paid for by the individual councilmen, and not return to the bank the unpaid $4500 of the $5000 advanced by the bank, with the intention of all parties concerned that it should be used, and which was used, for the purchase of the fire apparatus?

Do the applicable legal rules require that the borough, retaining the fire apparatus, the whole cost of which the individual councilmen have been compelled to pay by reason of their delinquencies, shall also keep the $4500 unpaid balance of the loan made by the bank for that purpose?

On behalf of the borough it is contended: (1) That because of disregard of the legal prerequisites, the furnishing of the $5000 by the bank created no municipal obligation. (2) That the irregular use of the money obtained from the bank in the purchase of apparatus was not such a legal appropriation for legal borough purposes as would sustain the equitable action of *assumpsit* for the money had and received.

It is conceded by defendant's argument that if the borough had the bank's money unexpended in its treasury, or if the vendors of the fire apparatus had returned it, the bank could recover. But it is insisted that because the bank's money was paid to the fire apparatus vendors and is kept by them, and an equal amount of other money has been paid back by the councilmen, the fund cannot be followed and the money repaid by the repentant councilmen cannot be considered, for the purpose of this case, the same as if the illegality had been discovered before the payment to the vendors of the fire apparatus and the replacement of the same amount by the councilmen.

It does not seem that a decision based upon the character of the different steps of the transaction taken because of the ignorance or disregard by all of the parties of certain necessary, but also technical, requirements would be just. Disregard of the legal mandates regarding the purchase of apparatus has been atoned by the replacement by the councilmen into the borough treasury of the amount illegally disbursed by them, and the money can very well be considered as in the same condition and subject to the same equities as though it were the same money received from the bank.

So far as any of the authorities to which we have been referred indicate, none contain the peculiar element in this case of the replacement in the municipal treasury of the full amount illegally disbursed by the persons responsible. The public policy of the Commonwealth requires this penalty of negligent officers. There is, however, no public policy requiring that the taxpayers of the borough, in addition to obtaining ownership and protection of the fire apparatus without cost to them, also should keep the money procured from the bank with the intention of all concerned that it should be used for a borough purpose, but which could not be and was not so used because of subsequently ascertained legal objections.

This is an action of *assumpsit* which can be made the vehicle of equitable jurisdiction to correct a hardship for which the law, by reason of its universality, might be deficient. The *dictum* in the opinion of Mr. Justice Brown, in Long *v.* Lemoyne Borough, 222 Pa. 311, points to the basis of a just decision here: "Municipal repudiation of honest indebtedness which the municipality intended to contract, and could have lawfully contracted, is no more to be tolerated than individual repudiation of honest indebtedness merely because it was not incurred in pursuance of a duly executed express contract, unless the municipal charter or the statutes prohibit the municipality from incurring any liability by implication." Though the bank cannot recover on the note given to it, there is an implied obligation resting upon the municipality to pay back what was lent to it in good faith. If the council had complied with the legal mandates, it could have authorized the borrowing of the money and the execution of the obligation to the bank. The fact of the replacement in the borough treasury by the delinquent councilmen of the amount to cover the very money which they had illegally undertaken to disburse makes this case unusual. Having received the money and now holding in its treasury the same amount returned after adjudication that its attempted use was illegal, the rectification of the error with which the whole transaction was affected should be completed. The borough has no equitable right to the $4500. The bank has, and is entitled to recover in this action.

And now, to wit, June 24, 1929, the court being of the opinion that the Borough of Manchester is liable under the law to pay the Union National Bank of Mt. Wolf, Pa., the sum of $4500 for the money had and received as set forth in the case stated, judgment is entered in favor of the plaintiff, the Union National Bank of Mt. Wolf, Pa., and against the defendant, the Borough of Manchester, for the sum of $4500, with interest from June 6, 1928, and costs of suits.                    From Richard E. Cochran, York, Pa.